# United States Court of Appeals
## FOR THE EIGHTH CIRCUIT

_____

No. 10-2447

_____

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | District of Minnesota. |
| Anthony Akeum Abari, | * | |
| | * | |
| Appellant. | * | |

_____

Submitted: February 18, 2011
Filed: April 14, 2011

_____

Before WOLLMAN and BYE, Circuit Judges, and FLEISSIG,[1] District Judge.

_____

WOLLMAN, Circuit Judge.

Anthony Akeum Abari asserts that the district court[2] erred when it determined that he qualified as an armed career criminal pursuant to 18 U.S.C. § 924(e)(2)(B). We affirm.

_____

[1]The Honorable Audrey G. Fleissig, United States District Judge for the Eastern District of Missouri, sitting by designation.

[2]The Honorable Richard H. Kyle, United States District Judge for the District of Minnesota.

Abari pleaded guilty to being a felon in possession of a firearm, in violation of § 922(g)(1). Pursuant to the plea, he agreed that his prior robbery and second degree assault convictions constituted violent felony offenses pursuant to § 924(e), but asserted that his prior Minnesota theft from person conviction did not. He reserved his right to argue that his theft from person conviction was not a prior violent felony and that he thus was not an armed career criminal. The district court determined that the Minnesota theft from person conviction constituted a prior violent felony and sentenced Abari as an armed career criminal pursuant to § 924(e).

## I. Discussion

"We review *de novo* a district court's determination that a defendant's prior conviction constitutes a violent felony for purposes of § 924(e)." United States v. Boaz, 558 F.3d 800, 806 (8th Cir. 2009) (citation omitted).

The Armed Career Criminal Act provides that a person who violates § 922(g) for being a felon in possession of a firearm and who has three prior violent felony convictions that were committed on separate occasions, is considered an armed career criminal subject to a statutory mandatory minimum sentence of fifteen years. 18 U.S.C. § 924(e)(1). Section 924(e)(2)(B) defines a violent felony as any crime punishable by imprisonment for a term exceeding one year that either "(i) has as an element the use, attempted use, or threatened use of physical force against the person of another; or (ii) is burglary, arson, or extortion, involves use of explosives, or otherwise involves conduct that presents a serious potential risk of physical injury to another[.]"

Under Minnesota law, a theft from person felony offense occurs when someone intentionally and without claim of right takes possession of movable property of another without the other's consent and with intent to deprive the owner permanently of possession of the property and "the property [was] taken from the person of

another." Minn. Stat. § 609.52, subds. 2(1) & 3(3)(d)(i); see United States v. Hudson, 414 F.3d 931, 934 n.2 (8th Cir. 2005) (citations omitted). Because the offense does not have a use-of-force element nor is equivalent to the enumerated offenses in § 924(e)(2)(B)(ii), it constitutes a violent felony only if it involves conduct that presents a serious potential risk of physical injury to another. In Begay v. United States, 553 U.S. 137 (2008), the Supreme Court limited offenses that fall within the residual clause of § 924(e)(2)(B)(ii) to those "that are roughly similar, in kind as well as in degree of risk posed," to the enumerated crimes in that they "typically involve purposeful, 'violent,' and 'aggressive' conduct." 553 U.S. at 143-45.

A. Serious Potential Risk of Physical Injury to Another

We have previously held that Minnesota's theft from person offense constitutes a violent felony for purposes of sentencing under the Armed Career Criminal Act. See Hudson, 414 F.3d at 935-36. Relying on United States v. Griffith, 301 F.3d 880, 885 (8th Cir. 2002), and United States v. Payne, 163 F.3d 371, 375 (6th Cir.1998), we described the potential for risk of physical injury created by theft from person as follows:

> This is clearly the type of situation that could result in violence. Any person falling victim to a crime involving such an invasion of personal space would likely resist or defend in a manner that could lead to immediate violence. Whether or not violence or harm actually results in any given instance is not relevant. We agree with the First Circuit that although larceny from the person typically involves no threat of violence, the risk of ensuing struggle is omnipresent.

Hudson, 414 F.3d at 935 (citation omitted). Abari contends that in light of Begay, we should revisit Hudson and conclude that theft from person is not a violent felony. Abari acknowledges that we have held, post-Begay, that Missouri's theft from person

statute is a violent felony, but argues that the Missouri statute is distinguishable. See United States v. Hennecke, 590 F.3d 619, 620 (8th Cir. 2010).

We begin by determining what effect, if any, Begay has had on our holding in Hudson. Begay added the requirement that the prior offense conduct be purposeful, violent, and aggressive. Abari highlights the Minnesota state court decisions in which the victim was unaware of the theft and did not resist and points to the Minnesota legislature's grouping of the theft from person offense with theft from a corpse or from a grave containing a corpse. He asserts that this grouping indicates that there is no serious potential risk of physical injury because theft from person is listed with thefts in which the person is no longer alive and is incapable of resisting or being injured. We find these arguments unpersuasive given that there is still a serious potential of risk of physical injury to the victim during a theft from person offense, as well as to third parties attempting to prevent the ensuing theft. In Hennecke, we determined that Begay did not overrule our prior determination in Hudson that Minnesota's theft from person offense involves conduct that presents a serious potential risk of physical injury to another. 590 F.3d at 622.

Abari asserts Hennecke does not foreclose his argument that the theft from person offense does not present a serious potential risk of physical injury to another because the Missouri statute criminalizing theft from a person is different from the Minnesota statute. The Missouri statute requires that the "actor physically takes the property appropriated from the person of the victim." Mo. Rev. Stat. § 570.030.3(2). Abari argues that the Missouri statute is distinguishable because it requires 1) physical force that is violent to constitute a violent felony and 2) that the property be taken directly from the victim.

Relying on Johnson v. United States, 130 S. Ct. 1265 (2010), Abari asserts that the "physically takes" Missouri statutory language, which is absent from the Minnesota statute, was a necessary predicate to our determination that the offense

qualified as a violent felony. We disagree. In Johnson, the Court determined that the definition of violent felony under § 924(e)(2)(B)(i) required that the phrase "physical force" must mean "*violent* force—that is, force capable of causing physical pain or injury to another person." Johnson, 130 S. Ct. at 1271 (citation omitted). In Hennecke, we determined that the Missouri statute satisfied the definition of violent felony pursuant to the residual clause of 18 U.S.C. § 924(e)(2)(B)(ii) because of the serious potential risk of physical injury to another, not because it had a use-of-force element, as would be required to satisfy § 924(e)(2)(B)(i). 590 F.3d at 621. The Supreme Court in Johnson specifically did not interpret the residual clause of § 924(e)(2)(B)(ii). Johnson, 130 S. Ct. at 1274. Accordingly, we conclude that Abari's reliance upon the "physically takes" language is inconsequential to our analysis under § 924(e)(2)(B)(ii), because we apply Begay, not Johnson, to determine whether the offense constituted a violent felony pursuant to § 924(e)(2)(B)(ii).

Abari also asserts that Hennecke does not apply because the Missouri statute requires that the stolen property must have been taken directly from the victim. See Hennecke, 590 F.3d at 623 (describing the "direct, unlawful contact" that occurs during the theft from a person offense). The Minnesota statute does not impose such a requirement, and the Minnesota Supreme Court has held that theft from a person includes theft of property that was in the victim's immediate presence. In re Welfare of D.D.S., 396 N.W.2d 831, 832-33 (Minn. 1986). Although the Minnesota statute criminalizes additional conduct, Hennecke remains persuasive. Whether the property was touching the victim or in the immediate presence of the victim, the offense conduct nevertheless poses a serious potential risk of physical injury to another because of the potential for confrontation by the victim or a third party. None of Abari's arguments persuades us otherwise. Returning to our Begay analysis, then, we must determine whether Minnesota's theft from person offense is roughly similar to burglary, in kind as well as in degree of risk posed, which turns on whether it typically involves purposeful, violent, and aggressive conduct.

### B. Minnesota's Theft from Person Offense is Roughly Similar to Burglary

Abari concedes that the theft from person offense involves purposeful conduct, but asserts that the offense is not roughly similar to burglary, in kind as well as in degree of risk posed. He contends that the offense does not typically involve violent or aggressive conduct, arguing that victims are usually unaware and thus unable to resist. Abari cites to a Minnesota crime report to demonstrate that the offense involves nonviolent, nonaggressive conduct. Abari's argument is foreclosed by our opinion in Hennecke, which held that "felony theft from a person poses a risk of violent confrontation with the victim or a third person at least equal to that posed by attempted burglary" and is a crime of violence under the residual clause of § 924(e)(2)(B)(ii). 590 F.3d at 623-24 ("Physically stealing from a person poses the same risk of violent confrontation with the victim or a third person as attempted or completed burglary."). Accordingly, we conclude that Minnesota's theft from person offense is a violent felony because it is roughly similar to burglary, in kind as well as in degree of risk posed, in that it typically involves purposeful, violent, and aggressive conduct.

The judgment is affirmed.

_____