# United States Court of Appeals
## For the Eighth Circuit

_____

No. 12-2837

_____

United States of America

*Plaintiff - Appellee*

v.

Milton Carlton Rucker, Jr.

*Defendant - Appellant*

_____

Appeal from United States District Court
for the District of Minnesota - St. Paul

_____

Submitted: October 21, 2013
Filed: November 6, 2013
[Unpublished]

_____

Before RILEY, Chief Judge, MURPHY, and COLLOTON, Circuit Judges.

_____

PER CURIAM.

Milton Rucker appeals his convictions for conspiracy to commit bank fraud, aggravated identity theft, and felon in possession of a firearm. He argues that the district court erred in denying his motions to suppress and for a <u>Franks</u> hearing, that his Sixth Amendment rights were violated, that the evidence was insufficient, and that the district court erred in sentencing. We affirm.

The government's investigation in this case started after FBI Special Agent Steven Molesky's car window was broken and his duffel bag stolen. The bag's contents included his service weapon, handcuffs, FBI identification, wallet with credit cards, and watch. Molesky's personal credit card was later used at a Holiday gas station, and two of his cards were unsuccessfully presented at a Target store. Surveillance video at these locations showed a woman using the credit cards and driving a 1999 Buick Century. She was later identified as Tania Thompson. Although the car was registered to Ashley Bastin, she had told police that Milton Rucker had been using it.

FBI agents and police officers went to Rucker's address. His apartment was located on the second level of a two story multi unit building. Tania Thompson answered the outside door and was arrested. The officers ordered Rucker and any other occupants to come downstairs. Rucker was placed under arrest, and a protective sweep search was conducted. Later after obtaining a search warrant, officers seized items including credit cards, documents, purses, cell phones, and $357 cash. Agent Molesky's stolen watch was also found in an air conditioning unit inside a storage area adjacent to a bathroom shared by multiple apartments. In Rucker's car officers discovered a punch tool, a partial spark plug, and an HP laptop computer registered to General Mills. Molesky's gun was found about five days later near a public walking path. Rucker was charged with being a felon in possession of a firearm, conspiracy to commit bank fraud, and aggravated identity theft.

Thompson entered into a plea agreement and testified for the government at Rucker's trial. She related that during the summer of 2011 she and Rucker had broken into "about ten" vehicles. The two took items from the cars and later sold or traded purchases they made with the stolen credit cards. Thompson also testified that she and Rucker found a gun inside Agent Molesky's duffel bag that Rucker was able to sell for $300. She also purchased gas for the car with one of Molesky's credit cards and unsuccessfully attempted to use two at a Target store. Rucker's phone records

-2-

corroborated Thompson's testimony, and Molesky's wallet and some of his credit cards were found in places Thompson identified. The government's evidence also included store security footage and latent prints on Molesky's car from both Rucker and Thompson.

Other witnesses were also called by the government. Gail Wong testified that the General Mills laptop found in Rucker's car had been stolen from her vehicle, Gumbare Mpambara explained that he had previously identified Rucker as the man he saw break a window in a gym parking lot. The United States also showed a store security video of Rucker and Thompson making a purchase with one of Mary VandeHei's credit cards after her purse was stolen from the family car. The jury returned a verdict of guilty on all three counts, and the district court denied Rucker's motion for acquittal or for a new trial.

At sentencing the district court[1] determined that Rucker had three "predicate offenses" under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e), making him subject to a fifteen year minimum sentence for his felon in possession conviction. The district court sentenced him to two concurrent terms of 180 months imprisonment on conspiracy to commit bank fraud and felon in possession and a consecutive term of 24 months on his aggravated identity theft, for a total sentence of 204 months. Rucker appeals.

We review de novo the district court's denial of a motion to suppress and review for clear error the "underlying factual determinations." United States v. Barker, 437 F.3d 787, 789 (8th Cir. 2006). We affirm if "on review of the record, 'any reasonable view of the evidence supports' the district court's decision." Id. (citing United States v. Bloomfield, 40 F.3d 910, 913 (8th Cir. 1994) (en banc)).

---

[1]The Honorable Patrick J. Schiltz, United States District Judge for the District of Minnesota.

Rucker argues that the district court erred by denying his motion to suppress the evidence seized in a warrantless search from the car he was using. Under the automobile exception to the Fourth Amendment, law enforcement officers may "search a vehicle without a warrant if they have probable cause to believe the vehicle contains evidence of criminal activity." United States v. Brown, 634 F.3d 435, 438 (8th Cir. 2011) (internal quotation marks omitted). Available security footage from Holiday showed that someone in Rucker's car had used Molesky's stolen credit card; there was thus probable cause to search the vehicle for evidence of criminal activity.

Rucker further argues that the district court erred by denying his motion to suppress evidence found in the "storage and trash area" adjoining the apartment's shared bathroom facilities. He argues that the search exceeded the scope of the search warrant and that he had an expectation of privacy in the area searched. For a legitimate expectation of privacy, Rucker "has the burden of showing both a subjective expectation of privacy and that the expectation is objectively reasonable." United States v. McCaster, 193 F.3d 930, 933 (8th Cir. 1999). Rucker did not show a "possessory interest" in the shared common area or that he had a means to exclude others from that space.

Rucker claims that the suppression hearing violated his Sixth Amendment right to confrontation under Crawford v. Washington, 541 U.S. 36 (2004), because a law enforcement officer testified as to what other officers had told him. Courts may consider hearsay evidence at suppression hearings, United States v. Boyce, 797 F.2d 691, 692–94 (8th Cir. 1986), and Rucker's right to confrontation was not violated by this testimony.

Although Rucker had not filed a formal motion for a Franks hearing or timely requested one, the magistrate judge examined whether he was entitled to such a hearing. Our review is for abuse of discretion. United States v. Engler, 521 F.3d 965, 969 (8th Cir. 2008). To merit a Franks hearing, a defendant must make "allegations

of deliberate falsehood or of reckless disregard for the truth," accompanied by "an offer of proof" that "point[s] out specifically the portion of the warrant affidavit that is claimed to be false . . . accompanied by a statement of supporting reasons." Franks v. Delaware, 438 U.S. 154, 171 (1978). Even if those requirements are met, "no hearing is required" if the remaining contents of the application satisfy probable cause. Id. at 172. Rucker contends that the search warrant was incomplete and misidentified Thompson as Ashley Bastin. The magistrate judge concluded that Rucker had made no showing that the officers attended to mislead, made any critical misidentification, or acted with "reckless disregard for the truth." We conclude that the district court considered relevant and proper factors and did not abuse its discretion by denying a Franks hearing.

Rucker challenges the sufficiency of the evidence for each conviction. We review de novo such a challenge, viewing "the evidence in the light most favorable to the guilty verdict, granting all reasonable inferences that are supported by that evidence" and reversing "only if no reasonable jury could have found the defendant guilty beyond a reasonable doubt." United States v. Sullivan, 714 F.3d 1104, 1106–07 (8th Cir. 2013) (internal quotation marks omitted).

To convict Rucker of being a felon in possession of a firearm, the government had to prove beyond a reasonable doubt that "(1) [Rucker] had previously been convicted of a crime punishable by a term of imprisonment exceeding one year; (2) [Rucker] knowingly possessed a firearm; (3) the firearm has been in or has affected interstate commerce." United States v. Maxwell, 363 F.3d 815, 818 (8th Cir. 2004); 18 U.S.C. § 922(g)(1). Rucker argues that the government did not show that he knowingly possessed the firearm. We have however recognized that "[i]t is well-established that the uncorroborated testimony of an accomplice" such as Thompson can be sufficient support if it "is not otherwise incredible or unsubstantial on its face." United States v. Vaughn, 410 F.3d 1002, 1004 (8th Cir. 2005) (internal quotation marks omitted). Rucker argues that there was no evidence that he possessed the

firearm, citing United States v. Madkins, 994 F.2d 540, 542 (8th Cir. 1993), but Thompson testified that Rucker took the gun after it was found in the duffel bag and made arrangements to sell it. This evidence was sufficient for conviction. Any question as to Thompson's credibility was a matter for the jury.

In order to show that Rucker conspired to commit bank fraud (the predicate felony for his aggravated identity theft conviction), the United States had to prove that he engaged in a conspiracy knowingly to execute or attempt to execute "a scheme or artifice– (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits . . . or other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises." 18 U.S.C. § 1344. To prove conspiracy, "the government must prove that there was an agreement to achieve an illegal purpose, that the defendant knew of the agreement, and that the defendant knowingly became part of that agreement." United States v. Jenkins-Watts, 574 F.3d 950, 959 (8th Cir. 2009). A conspirator may also be "liable for any substantive crime committed by a co-conspirator in the course and in furtherance of the conspiracy." Id. at 959 (internal quotation marks omitted). Although Rucker argues that the evidence was insufficient because the United States did not show that he used the credit cards, there was evidence that his coconspirator did, that Rucker gave her the cards to use, and surveillance showed both of them making a purchase with Mary VandeHei's credit card.

We review de novo the legal determination of whether prior convictions count as predicate offenses under the Armed Career Criminal Act (ACCA), 18 U.S.C. § 924(e). United States v. Keith, 638 F.3d 851, 852 (8th Cir. 2011). Under the ACCA a sentence for being a felon in possession of a firearm is enhanced if the defendant has three prior convictions for "a violent felony or a serious drug offense" as defined by statute. 18 U.S.C. § 924(e). Rucker argues that his 1991 conviction for "theft from a person" is not a violent felony. He was convicted of theft under both Section 609.52 subd. 2(1) and Section 609.52 subd. 3(3)(d)(i) of the Minnesota

Statutes. We have previously concluded that a conviction under these statutory sections "is a violent felony because it is roughly similar to burglary, in kind as well as in degree of risk posed, in that it typically involves purposeful, violent, and aggressive conduct." United States v. Abari, 638 F.3d 847, 851 (8th Cir. 2011).

Rucker argues that under the Supreme Court's decision in Descamps v. United States, 133 S. Ct. 2276 (2013), his 1991 conviction for "theft from a person" does not qualify as a predicate offense. The statutory language under which Rucker was convicted satisfies the definition of a "violent felony" when applying a modified categorical analysis. The district judge consulted the plea colloquy, a permissible document, id. at 2282, to determine that Rucker pled guilty to taking property "from the person of another." We have already concluded not only that the statute under which Rucker was convicted is a violent felony, but also that "felony theft from a person poses a risk of violent confrontation with the victim or a third person at least equal to that posed by attempted burglary." United States v. Hennecke, 590 F.3d 619, 623–24 (8th Cir. 2010). The district court did not err by using Rucker's conviction for theft from a person to enhance his sentence.

Rucker also argues that his aggravated robbery conviction under Minnesota Statutes § 609.245 is not a predicate offense. Under the ACCA, a "violent felony" is defined in part as "any crime punishable by imprisonment for a term exceeding one year" that "has as an element the use, attempted use, or threatened use of physical force against the person of another." 18 U.S.C. § 924(e)(2)(B)(i). At the time Rucker was convicted, one of the elements in Minn. Stat. § 609.245 was being "armed with a dangerous weapon or any article used or fashioned in a manner to lead the victim to reasonably believe it to be a dangerous weapon, or inflict[ing] bodily harm upon another." Minn. Stat. § 609.245 (1988) (amended 1994). The penalty was "imprisonment for not more than 20 years or . . . payment of a fine of not more than $35,000, or both." Id. Rucker's aggravated robbery conviction meets the definition of a "violent felony" under the ACCA because it has as an element "threatened use

of physical force" against another and is punishable by up to 20 years imprisonment. His conviction under the statute is thus a predicate offense.

Rucker argues that his 2000 conviction for first degree sale of drugs is not a predicate offense under the ACCA, which defines a "serious drug offense" in part as "an offense under State law, involving manufacturing, distributing, or possessing with intent to manufacture or distribute, a controlled substance . . . for which a maximum term of imprisonment of ten years or more is prescribed by law." 18 U.S.C. § 924(e)(2)(A)(ii). Rucker was convicted under a statute for which the maximum term of imprisonment was 30 years. Minn. Stat. § 152.021 subd. 3(a).

Rucker argues that the enhancement of his sentence under the ACCA violated his Sixth Amendment right to trial by jury because the prior convictions used to enhance his sentence were not alleged in the indictment. He cites Alleyne v. United States, where the Court stated that "any fact that increases the mandatory minimum is an 'element' that must be submitted to the jury." 133 S. Ct. 2151, 2155 (2013). The Court however mentioned a "narrow exception to this general rule for the fact of a prior conviction." 133 S. Ct. at 2160n.1 (citing Almendarez-Torres v. United States, 523 U.S. 224 (1998)). Thus, Alleyne's statement that facts increasing a mandatory minimum sentence are elements to be submitted to the jury, id. at 2155, did not overrule the Court's prior holding in Almendarez-Torres, 523 U.S. at 239–47, that a prior conviction is not an element of an offense.

Rucker argues that the district court erred in denying his request for a downward departure under U.S.S.G. § 5K2.13. A downward departure "may be warranted if (1) the defendant committed the offense while suffering from a significantly reduced mental capacity; and (2) the significantly reduced mental capacity contributed substantially to the commission of the offense." U.S. Sentencing Guidelines Manual § 5K2.13 (2004). There are however four specific instances where a court "may not depart below the applicable guideline range." These include

when "[his] criminal history indicates a need to incarcerate the defendant to protect the public." Id.

The district court noted Rucker's "extensive criminal history, including recent convictions for stealing from cars and using stolen credit cards" and stated that "[w]ithout doubt, the incarceration of Mr. Rucker is necessary for the protection of the public." A refusal to grant a downward departure is "generally unreviewable on appeal, unless the district court had an unconstitutional motive or erroneously believed it was without authority to grant the departure." United States v. Utlaut, 497 F.3d 843, 845 (8th Cir. 2007). The district court acted within its authority in making its sentencing decisions.

Accordingly, we affirm the judgment of the district court.

_____